IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

JIMMY H. MONNAHAN,

     Plaintiff,

vs.

MICHAEL J. ASTRUE,
Commissioner of the Social Security
Administration,

     Defendant.

No. C09-2050

RULING ON JUDICIAL REVIEW

_____

## TABLE OF CONTENTS

I.     **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.    **PROCEDURAL BACKGROUND** . . . . . . . . . . . . . . . . . . . . . . . . 2

III.   **PRINCIPLES OF REVIEW** . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV.   **FACTS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
     A.   *Monnahan's Education and Employment Background* . . . . . . . . . 5
     B.   *Administrative Hearing Testimony* . . . . . . . . . . . . . . . . . . . 5
          1.   *Monnahan's Testimony* . . . . . . . . . . . . . . . . . . . . . . . . 5
          2.   *Vocational Expert's Testimony* . . . . . . . . . . . . . . . . . . . . 7
     C.   *Monnahan's Medical History* . . . . . . . . . . . . . . . . . . . . . . 9

V.    **CONCLUSIONS OF LAW** . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
     A.   *ALJ's Disability Determination* . . . . . . . . . . . . . . . . . . . . 12
     B.   *Objections Raised By Claimant* . . . . . . . . . . . . . . . . . . . . 14
          1.   *Dr. Nora's Opinions* . . . . . . . . . . . . . . . . . . . . . . . . . 14
          2.   *Dr. Manshadi's Opinions* . . . . . . . . . . . . . . . . . . . . . . 17
          3.   *Development of the Medical Record* . . . . . . . . . . . . . . . . 19
          4.   *Credibility Determination* . . . . . . . . . . . . . . . . . . . . . 21

VI.   **CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

VII.  **ORDER** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 3) filed by Plaintiff Jimmy H. Monnahan on October 13, 2009, requesting judicial review of the Social Security Commissioner's decision to deny his applications for Title II disability insurance benefits and Title XVI supplemental security income ("SSI") benefits. Monnahan asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide him disability insurance benefits and SSI benefits. In the alternative, Monnahan requests the Court to remand this matter for further proceedings.

## II. PROCEDURAL BACKGROUND

On May 21, 2007, Monnahan applied for both disability insurance benefits and SSI benefits. In his applications, Monnahan alleged an inability to work since March 9, 2006 due to thoracic disc disease, pain in the sternum, ribs, and back, high blood pressure, diabetes, dizziness, and headaches. Monnahan's applications were denied on August 15, 2007. On October 10, 2007, Monnahan's applications were denied on reconsideration. On October 30, 2007, Monnahan requested an administrative hearing before an Administrative Law Judge ("ALJ"). On April 1, 2009, Monnahan appeared via video conference with his attorney before ALJ Marilyn P. Hamilton for an administrative hearing. Monnahan and vocational expert Elizabeth M. Albrecht testified at the hearing. In a decision dated May 8, 2009, the ALJ denied Monnahan's claims. The ALJ determined that Monnahan was not disabled and not entitled to disability insurance benefits or SSI benefits because he was functionally capable of performing other work that exists in significant numbers in the national economy. Monnahan appealed the ALJ's decision. On August 22, 2009, the Appeals Council denied Monnahan's request for review. Consequently, the ALJ's May 8, 2009 decision was adopted as the Commissioner's final decision.

On October 13, 2009, Monnahan filed this action for judicial review. The Commissioner filed an Answer on February 11, 2010. On April 22, 2010, Monnahan filed a brief arguing that there is not substantial evidence in the record to support the ALJ's finding that he is not disabled and that he could perform other work that exists in significant numbers in the national economy. On June 21, 2010, the Commissioner filed a responsive brief arguing that the ALJ's decision was correct and asking the Court to affirm the ALJ's decision. On January 21, 2010, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

### III.  PRINCIPLES OF REVIEW

Title 42, United States Code, Section 405(g) provides that the Commissioner's final determination following an administrative hearing not to award disability insurance benefits is subject to judicial review. 42 U.S.C. § 405(g). Pursuant to 42 U.S.C. § 1383(c)(3), the Commissioner's final determination after an administrative hearing not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3). 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court will "affirm the ALJ's decision if it is supported by 'substantial evidence on the record as a whole.'" *Heino v. Astrue*, 578 F.3d 873, 878 (8th Cir. 2009) (quoting *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007)). Evidence is "substantial evidence" if a reasonable person would find it adequate to support the ALJ's determination. *Wiese v. Astrue*, 552 F.3d 728, 730 (8th Cir. 2009) (citing *Eichelberger v. Barnhart*, 390 F.3d 584, 589 (8th Cir. 2004)); *see also Wildman v. Astrue*, 596 F.3d 959, 963-64 (8th Cir. 2010) ("'Substantial evidence is less than a preponderance, but is enough that a reasonable

mind would find it adequate to support the Commissioner's conclusion.' *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000).").

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citing *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Wagner*, 499 F.3d at 848 (citing *Bowman v. Barnhart*, 310 F.3d 1080, 1083 (8th Cir. 2002)). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Casey v. Astrue*, 503 F.3d 687 (8th Cir. 2007), the Eighth Circuit further explained that a court "will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 691 (citations omitted). "A decision is not outside that 'zone of choice' simply because [a court] may have reached a different conclusion had [the court] been the fact finder in the first instance." *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006). Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams*, 393 F.3d at 801 (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Wildman*, 596 F.3d at 964 ("If substantial evidence supports the ALJ's decision, we will not reverse the decision merely because substantial evidence would have also supported a contrary outcome, or because we would have decided differently."); *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'If there is substantial evidence to

support the Commissioner's conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005).").

## IV. FACTS

### A. Monnahan's Education and Employment Background

Monnahan was born in 1969. He is a high school graduate. Monnahan testified that he can read and write, but has some difficulty with basic math. However, he stated he could make change for a $20 bill.

The record contains a detailed earnings report for Monnahan. The report covers Monnahan's employment history from 1993 to 2008. According to the report, Monnahan worked at Bertch Cabinet Manufacturing, Inc. from mid-1993 to mid-2006. From 1994 to 2005, Monnahan earned between $21,414.83 (1999) and $29,671.62 (2002). He earned $7,717.82 in 2006, and had no earnings in 2007 and 2008.

### B. Administrative Hearing Testimony

### 1. Monnahan's Testimony

At the time of the administrative hearing, Monnahan testified that he could not do his past work as a sander, because prolonged standing and bending caused him chest and back pain. Monnahan described the pain as feeling "like somebody is lifting me up by my ribs constantly."[1] Monnahan also generally described his pain as follows:

> A:   I have pain constantly like just sitting here right now in my sternum, both sides of my ribs, and in my mid-back. And I can touch my chest and I can feel the center of my spine in my mid-back and down to the lower and upper. And I get headaches quite a bit.
>
> Q:   You say down to lower. Down to, to, to where? What are you referring to when you say down to lower?
>
> A:   My spine. It, it, it goes up and down and it just feels like I'm going to break in half from my chest through all the time.

---

[1] *See* Administrative Record at 38.

> Q: Is there anything that aggravates it or makes it worse?
> A: Sitting too long or standing too long or bending over for too long of a period, turning, coughing, sneezing.

(Administrative Record at 39.) Monnahan stated that he takes several types of pain relief medication. According to Monnahan, however, the medication doesn't relieve his pain, but instead makes him tired and helps him relax. He testified that the only pain relief he gets is from laying down on his back.

The ALJ asked Monnahan a series of questions regarding his functional capabilities:

> Q: Okay. How long are you able to sit at one time?
> A: No more than 15 minutes and I really start hurting like I am right now.
> Q: How long are you able to stand at a time?
> A: That's about the same.
> Q: How long are you able to walk at one time?
> A: Not very long. No more than ten minutes if that. Just walking around the school finding this place is quite a challenge.
> Q: What's the heaviest weight you can lift and/or carry now?
> A: If I'm bending over and picking up a grocery sack, I'd say five to ten pounds. It, it just hurts to bend or even put any kind of pressure on my back and chest.
> Q: Are you able to lift a gallon of milk?
> A: Yes, I can.
> Q: Are you able to lift two gallons of milk at the same time?
> A: No. It feels like I'm going to crack in half.
> Q: Are you able to bend over and touch your toes? You said it hurts but are you able to do it?
> A: It hurts and as far as I can get is my shoestring. I usually have to put my foot up on the chair to tie my shoe.
> Q: Are you able to squat down and pick up objects from the floor?
> A: Very slowly and painfully.
> Q: Are you able to climb stairs?
> A: Not very often, no. We only have two steps to our front door and that hurts just twisting going, going up.

> Q: Are you able to push? Do you have any problems with your arms as far as pushing or pulling or otherwise using your arms or hands?
>
> A: My fingers go tingly even if I'm writing out like a money order or something. My fingers get numb and tingly a lot if I grip something too long.

(Administrative Record at 42-44.)

Monnahan's attorney also questioned Monnahan. In response to his attorney's question about concentration, Monnahan stated that his constant pain made it difficult for him to concentrate throughout the day. Monnahan's attorney asked Monnahan to discuss his abilities to do work around the house:

> Q: Are you able to help with household chores?
>
> A: Once in a while I do a load of laundry and feed the pets and maybe lean on the counter to cook something or I mostly eat microwave food when the kids aren't around or Paula.
>
> Q: All right. Can you do the lawn mowing and heavy work?
>
> A: No, I do not push the mower or shovel.

(Administrative Record at 50.) With regard to sleeping, Monnahan testified that he has difficulty sleeping and wakes up every couple hours to change positions. He stated that he spends most of his days laying in bed or sitting in a recliner. Specifically, he spends about six hours each day laying down in bed.

### 2. *Vocational Expert's Testimony*

At the hearing, the ALJ provided vocational expert Elizabeth Albrecht with a hypothetical for an individual who is able to perform "light work[.] . . . The person can only occasionally climb, balance, stoop, kneel, crouch and crawl."[2] The vocational expert testified that under such limitations, Monnahan could not perform his past relevant work without accommodations from his employer. The vocational expert further testified that Monnahan could perform the following work: (1) small products assembler (5,400

---

[2] *See* Administrative Record at 54.

positions in Iowa and 375,000 positions in the nation), (2) stock clerk and order filler (2,300 positions in Iowa and 187,000 positions in the nation), and (3) routing clerk (750 positions in Iowa and 72,000 positions in the nation). The ALJ provided the vocational expert with a second hypothetical for an individual who is able to perform "sedentary work[.] . . . The person should never climb ropes, ladders or scaffolds on the job and only occasionally climb ramps or stairs, occasionally balance, stoop, kneel, crouch or crawl."[3] Similarly, the vocational expert testified that under such limitations, Monnahan could not perform his past relevant work. The vocational expert further testified that Monnahan could perform the following work: (1) final assembler (900 positions in Iowa and 60,000 positions in the nation), (2) surveillance system monitor (200 positions in Iowa and 14,000 in the nation), and (3) addresser (300 positions in Iowa and 25,000 positions in the nation).

Monnahan's attorney also provided the vocational expert with a hypothetical question for an individual who can:

> occasionally lift no more than ten pounds, no frequent lifting, only occasional fine or gross manipulation or gripping with both upper extremities, could stand 15 minutes before changing positions, sit 15 minutes at a time, must walk around every ten minutes for five to ten minutes, must be allowed to shift positions at will from sitting or standing to walking, would be required to lie down at unpredictable intervals of four times per day, no climbing ladders only occasional stooping, bending, twisting, crouching, and climbing stairs, avoid concentrated exposure to extreme heat and humidity, no close attention to detail, no work at heights or around dangerous or moving machinery, at least a moderate limitation on the ability to maintain attention and concentration [] due to side effects of medications and pain and, and headaches and would be absent from work more than four days per month due to symptoms of his impairments.

---

[3] *See* Administrative Record at 56.

(Administrative Record at 59.) The vocational expert responded that under such limitations, Monnahan would be precluded from competitive employment. Monnahan's attorney further inquired "if the person was required to . . . lay down for six out of an eight hour day, I'm assuming regardless of what the other exertional or non-exertional restrictions were they would be incapable of competitive employment."[4] The vocational expert agreed that such an individual would be precluded from competitive employment.

### C. Monnahan's Medical History

On May 31, 2006, Monnahan was evaluated by Dr. Joseph T. Nora, M.D., for complaints of bilateral thoracic radicular pain. Dr. Nora noted that Monnahan was tender to touch over the anterior ribs and was able to perform five push-ups without difficulty. MRI results from June 2006, showed moderate degenerative disc disease at each disc level from T5 through T11. The MRI also showed mild central disc bulges at T6-7, T7-8, and T8-9. Lastly, the MRI showed a small herniation at T5-6 causing a slight compression of the spinal cord. A second MRI from June 2006, showed midline posterior disc protrusion at L5-S1.

On August 31, 2006, Monnahan underwent an independent medical examination performed by Dr. Kenneth McMains, M.D. Monnahan described his symptoms as a "band-like pain in his rib and mid back in the pectoral areas above the nipple line and into the thoracic spine from approximately C7-T12."[5] Dr. McMains also noted that Monnahan "reports a constant ache in the low back, but did not mark the low back on the pain drawing completed at the time of the [examination]."[6] Upon examination, Dr. McMains concluded that Monnahan had significant degenerative disc disease at multiple levels and incidental T5-6 disc protrusion.

---

[4] *Id.* at 60.

[5] *See* Administrative Record at 302.

[6] *Id.*

9

On December 12, 2006, Monnahan was evaluated by Dr. Nora for an impairment rating. Dr. Nora noted that Monnahan had normal strength in all of his extremities. Monnahan's deep tendon reflexes and sensory exam were also normal. Dr. Nora, however, found that Monnahan continued to be bothered by pain. Dr. noted that Monnahan's pain "was not improved with thoracic epidural, intercostal blocks, use of Lyrica or Cymbalta."[7] Dr. Nora concluded that Monnahan has a 7% whole person impairment. Dr. Nora recommended that Monnahan should lift no more than 40 pounds.

On July 26, 2007, Monnahan underwent a physical evaluation by Robert M. Welshons, PA-C ("Welshons"). Monnahan's medical complaints consisted of chronic back and chest pain. Upon examination, Welshons diagnosed thoracic back pain with radiculopathy and hypertension. Welshons noted that Monnahan "is living with chronic pain and has not found much medication helpful."[8] Welshons opined that:

> [Monnahan] should not lift anything but the most minimal weights and should avoid lifting or bending. He should do these activities rarely. He has some troubles with standing and walking because of back pain but shows no troubles moving about, and he may be able to sit for extended periods of time. He would not do well in a position requiring a lot of physical exertion or standing for long periods of time. He has no problems with speaking, hearing or handling objects. He may have troubles with traveling. He should not be doing stooping, kneeling or crawling. He would have no restrictions to work environments regarding dust, fumes, temperatures or other hazards.

(Administrative Record at 327.)

On August 14, 2007, Dr. Laura Griffith, D.O., reviewed Monnahan's medical records and provided Disability Determination Services ("DDS") with a physical residual functional capacity ("RFC") assessment for Monnahan. Dr. Griffith determined that

---

[7] *Id.* at 285.

[8] *See* Administrative Record at 327.

Monnahan could: (1) occasionally lift and/or carry 20 pounds, (2) frequently lift and/or carry 10 pounds, (3) stand and/or walk with normal breaks for at about six hours in an eight-hour workday, (4) sit with normal breaks for a total of about six hours in an eight-hour workday, and (5) push and/or pull without limitations. Dr. Griffith also determined that Monnahan could occasionally climb, balance, stoop, kneel, crouch, and crawl. Dr. Griffith found no manipulative, visual, communicative, or environmental limitations.

On July 9, 2008, Monnahan underwent a independent medical examination performed by Dr. Farid Manshadi, M.D. Dr. Manshadi outlined Monnahan's physical condition as follows:

> Currently Mr. Monnahan reports he has pain in the chest and the mid-back area. He also has pain involving the ribcage which comes from the posterior mid-thoracic region into the anterior aspect of his chest. He has constant pain that becomes worse with activities such as stooping, standing and prolonged sitting. He also reports numbness and tingling in both hands involving the 3rd and 4th digits with radiation to the forearms bilaterally. He also has low back pain. . . . Mr. Monnahan also reports he is unable to do many chore activities around the house. . . . He has to perform his activities of daily living at a much slower pace. Lifting is also very difficult for him and he doesn't lift more than a gallon of milk.

(Administrative Record at 354.) Upon examination, Dr. Manshadi diagnosed Monnahan with: (1) mid-thoracic pain with radicular symptoms to anterior chest area with MRI findings of thoracic disc disease; (2) low back pain with lower extremity radicular symptoms with MRI findings of L5-S1 disc disease; (3) neck pain with reduced range of motion; and (4) bilateral carpal tunnel syndrome with reduced sensation involving the median digits. Dr. Manshadi concluded that:

> Mr. Monnahan currently has significant disability due to multiple conditions, primarily involving thoracic disc disease and lumbar disc disease as well as bilateral carpal tunnel syndrome. Mr. Monnahan at this point I believe is completely disabled from performing any work activity which requires

11

lifting, stooping, bending at his waist, and standing, walking
or prolonged sitting.

(Administrative Record at 355.)

Dr. Manshadi also filled out a "Medical Opinion of Ability to Do Work-Related Activities" form. Dr. Manshadi opined that Monnahan could: (1) occasionally lift/carry 10 pounds; (2) frequently lift/carry less than 10 pounds; (3) stand and walk for less than 2 hours with normal breaks in an eight-hour workday; (4) sit for less than 2 hours with normal breaks in an eight-hour workday; (5) sit 15 minutes before needing to change position; and (6) stand for 15 minutes before needing to change position. Dr. Manshadi further opined that Monnahan would need to be able to shift at will from sitting or standing and walking during an eight-hour workday. Dr. Manshadi indicated that Monnahan would also need to lie down four times during an eight-hour workday. Dr. Manshadi determined that Monnahan should occasionally twist, stoop, crouch or climb stairs; and never climb ladders. Lastly, Dr. Manshadi opined that Monnahan's impairments would cause him to miss more than four days of work per month.

## V. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Monnahan is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007); *Anderson v. Barnhart*, 344 F.3d 809, 812 (8th Cir. 2003). The five steps an ALJ must consider are:

> (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.

12

*Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citing *Eichelberger*, 390 F.3d at 590); *see also* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In order to establish a disability claim, "the claimant bears the initial burden to show that [he or] she is unable to perform [his or] her past relevant work." *Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998) (citing *Reed v. Sullivan*, 988 F.2d 812, 815 (8th Cir. 1993)). If the claimant meets this burden, the burden of proof then shifts to the Commissioner to demonstrate that the claimant retains the residual functional capacity ("RFC") to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Id*. The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. §§ 404.1545, 416.945. "It is 'the ALJ's responsibility to determine [a] claimant's RFC based on all the relevant evidence, including medical records, observations of treating physicians and others, and [the] claimant's own description of her limitations.'" *Page*, 484 F.3d at 1043 (quoting *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)); 20 C.F.R. §§ 404.1545, 416.945.

The ALJ applied the first step of the analysis and determined that Monnahan had not engaged in substantial gainful activity since March 9, 2006. At the second step, the ALJ concluded from the medical evidence that Monnahan had the following severe combination of impairments: degenerative disc disease of the thoracic spine, degenerative disc disease of the lumbar spine, and obesity. At the third step, the ALJ found that Monnahan did not have an impairment or combination of impairments listed in "20 C.F.R. [§] 404, [Appendix 1, Subpart P, Regulations No. 4 (the Listing of Impairments)]." At the fourth step, the ALJ determined Monnahan's RFC as follows:

> [Monnahan] has the residual functional capacity to perform
> sedentary work as defined in 20 CFR 404.1567(a) and
> 416.967(a) except he can never climb ropes, ladders,
> scaffolds; he can occasionally climb ramps or stairs; he can
> occasionally balance, stoop, kneel, crouch, and crawl; he must
> be able to alternate between sitting up to thirty minutes with
> the ability to stand for sixty seconds before resuming the
> sitting position; and he is able to do only simple routine
> repetitive work.

(Administrative Record at 12.) Also at the fourth step, the ALJ determined that Monnahan could not perform any of his past relevant work. At the fifth step, the ALJ determined that based on his age, education, previous work experience, and RFC, Monnahan could work at jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded that Monnahan was not disabled.

### B. Objections Raised By Claimant

Monnahan argues that the ALJ erred in four respects. First, Monnahan argues that the ALJ failed to properly evaluate the opinions of Dr. Nora, a treating physician. Second Monnahan argues that the ALJ failed to give good reasons for discounting the opinions of Dr. Manshadi, an examining physician. Third, Monnahan argues that the ALJ failed to fully and fairly develop the record with regard to the medical evidence in this matter. Lastly, Monnahan argues that the ALJ failed to properly evaluate his subjective allegations of disability in light of Dr. Nora's opinions and his obesity.

### 1. Dr. Nora's Opinions

Monnahan argues that the ALJ failed to properly evaluate the opinions of his treating physician, Dr. Nora. Specifically, Monnahan argues that the ALJ failed to consider or discuss one of Dr. Nora's treatment notes from June 2006. In particular, Monnahan maintains that the ALJ should have discussed Dr. Nora's opinion in that treatment note that his MRI and diagnosis of degenerative disk disease were consistent with the medical evidence and his subjective complaints. Monnahan maintains that this matter

should be reversed and remanded for further consideration and development of Dr. Nora's opinions.

An ALJ is required to "assess the record as a whole to determine whether treating physicians' opinions are inconsistent with substantial evidence on the record." *Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2)). The opinion of a treating physician:

> should not ordinarily be disregarded and is entitled to substantial weight. A treating physician's opinion regarding an applicant's impairment will be granted controlling weight, provided the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record.

*Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000) (citations omitted).

"Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as a whole." *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)). "The ALJ may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions." *Id.*; *see also Travis*, 477 F.3d at 1041 ("A physician's statement that is 'not supported by diagnoses based on objective evidence' will not support a finding of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003). If the doctor's opinion is 'inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight.' *Id.*"); *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004) (an ALJ does not need to give controlling weight to a physician's RFC assessment if it is inconsistent with other substantial evidence in the record); *Cabrnoch v. Bowen*, 881 F.2d 561, 564 (8th Cir. 1989) (the resolution of conflicts of opinion among various treating and examining physicians is the proper function of an ALJ).

The regulations also require an ALJ to give "good reasons" for giving weight to statements provided by a treating physician. *See* 20 C.F.R. § 404.1527(d)(2). The

regulations also require an ALJ to give "good reasons" for rejecting statements provided by a treating physician. *Id.*; *see also Tilley v. Astrue*, 580 F.3d 675, 680 (8th Cir. 2009) ("The regulations require the ALJ to 'always give good reasons' for the weight afforded to the treating source's opinion.") (citation omitted).

Contrary to Monnahan's assertion, the ALJ did consider Dr. Nora's June 2006 treatment note. While not referring to the treatment note by date, the ALJ discussed Monnahan's MRI from June 2006. The ALJ noted that the MRI "showed central herniation at T5-6 causing slight compression of right anterior aspect of cord as well as some disc space narrowing at T5-6, T6-7, T7-8, T8-9, and T9-10."[9] Moreover, the ALJ thoroughly discussed and considered all of Dr. Nora's treatment notes and opinions contained in the record.[10] Upon consideration of all of Dr. Nora's opinions, the ALJ determined that "significant weight" should be given to "Dr. Nora's treating notes and to his opinions due to the treating history, clinical findings, and reasoned bases for his decisions, but not controlling weight because later medical evidence of record has also been considered."[11] Accordingly, the Court finds that the ALJ adequately discussed Dr. Nora's opinions that Monnahan's MRI and diagnosis of degenerative disk disease were consistent with the medical evidence and his own subjective complaints. The ALJ properly considered Monnahan's disability claim in the context of all of Dr. Nora's opinions and Monnahan's entire medical history, not just one treatment note from June 2006. *See Travis*, 477 F.3d at 1041 (an ALJ is required to "assess the record as a whole to determine whether treating physicians' opinions are inconsistent with substantial evidence on the record.").

---

[9] *See* Administrative Record at 14 (ALJ's decision); *compare* Administrative Record at 290 (Dr. Nora's June 2006 treatment note).

[10] *See* Administrative Record at 13-14.

[11] *See* Administrative Record at 14.

For example, the ALJ noted that in December 2006, Dr. Nora found that Monnahan had normal strength in all of his extremities. Monnahan's deep tendon reflexes and sensory exam were also normal. The ALJ further noted that Dr. Nora also found that Monnahan continued to be bothered by pain, but determined that his pain had decreased since May 2006.[12] Thus, even though Dr. Nora found Monnahan's June 2006 MRI and subjective complaints consistent with the medical evidence in June 2006, his opinion changed in December 2006, and he noted that Monnahan's pain had decreased. Therefore, the Court concludes that remand is unnecessary because the ALJ fully and fairly developed the record with regard to the opinions of Dr. Nora, and properly considered and addressed Dr. Nora's opinions in the context of Monnahan's entire treatment history. *See Cox*, 495 F.3d at 618 (an ALJ has a duty to develop the record fully and fairly).

Having reviewed the entire record, the Court finds that the ALJ properly considered and weighed the opinion evidence provided by Dr. Nora. The Court also finds that the ALJ provided "good reasons" for granting significant weight to Dr. Nora's opinions. *See Tilley*, 580 F.3d at 680 ("The regulations require the ALJ to 'always give good reasons' for the weight afforded to the treating source's opinion."). Even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

### 2. *Dr. Manshadi's Opinions*

Monnahan argues that the ALJ failed to properly evaluate the opinions of Dr. Manshadi, an examining physician. Specifically, Monnahan argues that the ALJ failed to give good reasons for discounting Dr. Manshadi's opinions. Monnahan maintains that this matter should be reversed and remanded for further consideration of the opinions of Dr. Manshadi.

---

[12] *See* Administrative Record at 14 (ALJ's decision); *compare* Administrative Record at 285-86 (Dr. Nora's December 2006 treatment notes).

An ALJ is required to evaluate every medical opinion he or she receives from a claimant. 20 C.F.R. §§ 404.1527(d), 416.927(d). If the medical opinion is not from a treating source, then the ALJ considers the following factors for determining the weight to be given to the non-treating medical opinion: "(1) examining relationship, (2) treating relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors." *Wiese*, 552 F.3d at 731 (citing 20 C.F.R. §§ 404.1527(d)). "'It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.'" *Wagner*, 499 F.3d at 848 (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)).

In her decision, the ALJ thoroughly addressed and considered the opinions of Dr. Manshadi. The ALJ also considered the pertinent factors in determining the weight to be given Dr. Manshadi's opinions, particularly the examining and treating relationship between Dr. Manshadi and Monnahan, and the supportability and consistency of Dr. Manshadi's opinions. Specifically, the ALJ determined that:

> It is emphasized that [Monnahan] underwent the examination that formed the basis of the opinion in question not in an attempt to seek treatment for symptoms, but rather through attorney referral and in connection with an effort to generate evidence for the current appeal. . . . Although such evidence is certainly legitimate and deserves due consideration, the context in which it was produced cannot be entirely ignored. Dr. Manshadi's opinion is internally inconsistent and contrasts sharply with the other evidence of record, which renders it much less persuasive. For example, Dr. Manshadi noted [Monnahan] had a positive Tinel's and Phalen's test bilaterally over the wrists; [Monnahan] had reduced pinprick and light touch involving the bilateral median fingers; and Dr. Manshadi diagnosed [Monnahan] with bilateral carpal tunnel syndrome with reduced sensation involving the median digits. However, Dr. Manshadi opined [Monnahan's] fingering (fine manipulation), handling (gross manipulation), and feeling were not affected by [his] physical impairments. Moreover,

> [Monnahan] had not complained of symptoms which could be
> attributable to carpal tunnel syndrome to any other doctor, and
> has sought no definitive testing or treatment for carpal tunnel
> syndrome. For all these reasons, including internal
> inconsistency and inconsistency with other medical evidence of
> record, the undersigned assigns little evidentiary weight to
> Dr. Manshadi's opinions.

(Administrative Record at 16-17.)

Having reviewed the entire record, the Court finds that the ALJ properly considered
and weighed the opinion evidence provided by Dr. Manshadi. The Court also finds that
the ALJ properly explained his reasons for rejecting Dr. Manshadi's opinions. *See
Wagner*, 499 F.3d at 848. Accordingly, even if inconsistent conclusions could be drawn
on this issue, the Court upholds the conclusions of the ALJ because they are supported by
substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

### 3. Development of the Medical Record

Monnahan argues that the ALJ failed to fully and fairly develop the record because
she did not request a statement of limitations from Dr. Nora, his treating physician.
Monnahan also argues that the ALJ should have ordered a consultative examination since
she discounted Dr. Manshadi's report. Monnahan maintains that this matter should be
remanded to further development of the medical record.

An ALJ has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d
614, 618 (8th Cir. 2007); *Sneed v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004); *Wilcutts
v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). Because an administrative hearing is a
non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that
"'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138
(quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)); *see also Smith v. Barnhart*,
435 F.3d 926, 930 (8th Cir. 2006) ("A social security hearing is a non-adversarial
proceeding, and the ALJ has a duty to fully develop the record."). "There is no bright line
rule indicating when the Commissioner has or has not adequately developed the record;

19

rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted).

Additionally, an ALJ is not required to "seek additional clarifying statements from a treating physician unless a crucial issue is undeveloped." *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) (citation omitted). An ALJ should only contact a treating physician "if the doctor's records are 'inadequate for us to determine whether the claimant is disabled' such as 'when the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.'" *Goff*, 421 F.3d at 791 (citing 20 C.F.R. §§ 404.1512(e) and 416.912(e)). An ALJ may also order medical examinations and tests when the medical records presented to him or her constitute insufficient medical evidence to determine whether the claimant is disabled. *Barrett v. Shalala*, 38 F.3d 1019, 1023 (8th Cir. 1994) (citation omitted); *see also* 20 C.F.R. § 404.1519a(a)(1) ("The decision to purchase a consultative examination . . . will be made after we have given full consideration to whether the additional information needed is readily available from the records of your medical sources."). Additionally, 20 C.F.R. § 404.1519a(b) provides that "[a] consultative examination may be purchased when the evidence as a whole, both medical and nonmedical, is not sufficient to support a decision on . . . [the] claim." *Id.* For example, a consultative examination should be purchased when "[t]he additional evidence needed is not contained in the records of your medical sources." 20 C.F.R. § 404.1519a(b)(1).

Here, the ALJ fully considered Dr. Nora's treatment notes and opinions, including his recommendation of a 40 pound lifting limitation, Dr. McMains' independent medical examination, Welshons' physical evaluation, with significant weight given to Welshons' examination results, Dr. Griffith's physical RFC for DDS, and Dr. Manshadi's independent medical examination. The Court finds such medical evidence adequate for making a disability determination. No crucial issues were undeveloped and the medical evidence was based on medically acceptable clinical and laboratory diagnostic techniques.

Therefore, the ALJ did not err by not requesting a statement of limitations from Dr. Nora, or by not ordering a consultative examination. *See Goff*, 421 F.3d at 791 (an ALJ should contact a treating physician for further information when "the doctor's records are 'inadequate for us to determine whether the claimant is disabled' such as 'when the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.'") (quotation omitted); *Stormo*, 377 F.3d at 806 (an ALJ is not required to "seek additional clarifying statements from a treating physician unless a crucial issue is undeveloped"); *Barrett*, 38 F.3d at 1023 (an ALJ may order a medical examination when the medical records presented to him or her constitute insufficient medical evidence to determine whether the claimant is disabled). Therefore, the Court determines that the ALJ fully and fairly developed the record as to the medical evidence in this case. *See Cox*, 495 F.3d at 618.

### 4. Credibility Determination

Monnahan argues that the ALJ failed to properly evaluate his subjective allegations of disability or consider his obesity in evaluating those allegations. Monnahan maintains that the ALJ's credibility determination is not supported by substantial evidence. The Commissioner argues that the ALJ properly considered Monnahan's testimony and obesity, and properly evaluated the credibility of his subjective complaints.

When assessing a claimant's credibility, "[t]he [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; [and] (5) functional restrictions." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The absence of objective medical evidence to support a claimant's subjective complaints is also a relevant factor for an ALJ to consider. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001) (citation omitted). The

ALJ, however, may not disregard a claimant's subjective complaints "solely because the objective medical evidence does not fully support them." *Polaski*, 739 F.2d at 1322; *see also Dukes v. Barnhart*, 436 F.3d 923, 928 (8th Cir. 2006) ("In discrediting subjective claims, the ALJ cannot simply invoke *Polaski* or discredit the claim because they are not fully supported by medical evidence.").

Instead, "'[a]n ALJ may discount a claimant's subjective complaints only if there are inconsistencies in the record as a whole.'" *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008) (quoting *Porch v. Chater*, 115 F.3d 567, 572 (8th Cir. 1997)); *see also Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) ("The ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole."). If an ALJ discounts a claimant's subjective complaints, he or she is required to "'detail the reasons for discrediting the testimony and set forth the inconsistencies found.'" *Ford v. Astrue*, 518 F.3d 979, 982 (8th Cir. 2008) (quoting *Lewis v. Barnhart*, 353 F.3d 642, 647 (8th Cir. 2003)); *see also Baker v. Apfel*, 159 F.3d 1140, 1144 (8th Cir. 1998) ("When rejecting a claimant's complaints of pain, the ALJ must make an express credibility determination, must detail reasons for discrediting the testimony, must set forth inconsistencies, and must discuss the *Polaski* factors."). Where an ALJ seriously considers, but for good reason explicitly discredits a claimant's subjective complaints, the Court will not disturb the ALJ's credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001) (citing *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996)); *see also Guilliams*, 393 F.3d at 801 (explaining that deference to an ALJ's credibility determination is warranted if the determination is supported by good reasons and substantial evidence); *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003) ("If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, we will normally defer to the ALJ's credibility determination."). "'The credibility of a claimant's

subjective testimony is primarily for the ALJ to decide, not the courts.'" *Wagner*, 499 F.3d at 851 (quoting *Pearsall*, 274 F.3d at 1218).

Additionally, Social Security Ruling ("SSR") 02-1p provides that the Social Security Administration considers "obesity to be a medically determinable impairment and reminds adjudicators to consider the effects when evaluating disability. The provisions also remind adjudicators that the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately." SSR 02-1p. The ruling also instructs "adjudicators to consider the effects of obesity not only under the listings but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity." *Id*.

In her decision, the ALJ determined that:

> After careful consideration of the evidence, the undersigned finds that [Monnahan's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Monnahan's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment. . . .

> Although [Monnahan] has described daily activities which are fairly limited, two factors weigh against considering these allegations to be strong evidence in favor of finding [Monnahan] disabled. First, allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty. Second, even if [Monnahan's] daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to [Monnahan's] medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this decision. Overall, [Monnahan's] reported limited daily activities are considered to be outweighed by the other factors discussed in this decision. Interestingly, [Monnahan] now describes activities which are so limited that he spends much of every day in bed, yet he does not describe such to his treating physicians nor did he describe such limited activities of daily living in documents

he completed for this application and appeal and there has been no intervening injury or incident to precipitate such decreased abilities. . . .

[Monnahan] stated that between 8 a.m. and 5 p.m. he lays down six or more hours. Yet the record of evidence reveals no incident to account for such restrictive activities. [Monnahan's] residual functional capacity, discussed above, is quite restrictive and is formulated based on the entire medical evidence of record, including [Monnahan's] pain resulting from the degenerative disc disease of the thoracic spine and the degenerative disc disease of the lumbar spine. . . .

Treatment notes in the record do not sustain [Monnahan's] subjective allegations. To the extent [Monnahan] experienced pain, there were only mild to moderate limitations. . . . The credibility of [Monnahan's] allegations is weakened by evidence of diverse daily activities and inconsistencies between [Monnahan's] testimony and the medical records for the relevant period. [Monnahan] does experience some level of limitations, but only to the extent described in the residual functional capacity.

(Administrative Record at 16-19.)

It is clear from the ALJ's decision that she considered and discussed Monnahan's treatment history, medical history, functional restrictions, and activities of daily living in making her credibility determination. In her decision, the ALJ also explicitly stated that she considered Monnahan's obesity in making her disability determination.[13] Thus, having reviewed the entire record, the Court finds that the ALJ adequately considered and addressed the *Polaski* factors in determining that Monnahan's subjective allegations of disability were not credible. *See Johnson*, 240 F.3d at 1148; *see also Goff*, 421 F.3d at 791 (an ALJ is not required to explicitly discuss each *Polaski* factor, it is sufficient if the ALJ acknowledges and considers those factors before discounting a claimant's subjective complaints); *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not

_____

[13] *See* Administrative Record at 12-13.

required to discuss each *Polaski* factor as long as the analytical framework is recognized and considered. *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996).").  Accordingly, because the ALJ seriously considered, but for good reasons explicitly discredited Monnahan's subjective complaints, the Court will not disturb the ALJ's credibility determination. *See Johnson*, 240 F.3d at 1148. Even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

## VI. CONCLUSION

The Court finds that the ALJ properly considered and addressed the medical opinion evidence in the record, fully and fairly developed the record as to the medical evidence, and properly determined Monnahan's credibility with regard to his subjective complaints of pain and disability.  Accordingly, the Court determines that the ALJ's decision is supported by substantial evidence and shall be affirmed.

## VII. ORDER

For the foregoing reasons, it is hereby **ORDERED**:

1.    The final decision of the Commissioner of Social Security is **AFFIRMED**;

2.    Plaintiff's Complaint (docket number 3) is **DISMISSED** with prejudice; and

3.    The Clerk of Court is directed to enter judgment accordingly.

DATED this _8th_ day of September, 2010.

_____

JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA